**Opinion filed July 23, 2026**



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00211-CR
_____

### CHARLES LEE LEVAN, JR., Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 29th District Court**

**Palo Pinto County, Texas**

**Trial Court Cause No. 11625**

## M E M O R A N D U M   O P I N I O N

A jury convicted Appellant, Charles Lee Levan, Jr., of murder and assessed his punishment at confinement for thirty-five years in the Institutional Division of the Texas Department of Criminal Justice and a $10,000 fine. *Levan v. State*, 93 S.W.3d 581, 583 & n.1 (Tex. App.—Eastland 2002, pet. ref'd). We affirmed Appellant's conviction on direct appeal. *Id.* at 587. More than twenty years later,

Appellant filed a motion for post-conviction DNA testing under Chapter 64 of the Code of Criminal Procedure, which provides a procedural vehicle through which a convicted person who satisfies the Article's prerequisites may obtain testing of biological evidence. *See* TEX. CODE CRIM. PROC. ANN. arts 64.01–.05 (West 2018); *Ex parte Gutierrez*, 337 S.W.3d 883, 889–90 (Tex. Crim. App. 2011). The trial court denied the motion. Appellant now appeals from the trial court's denial, asserting a single issue. *See* CRIM. PROC. art. 64.05 (permitting appeal from the denial of a motion for forensic DNA testing to the court of appeals in matters other than death sentence cases arising out of a capital offense). We affirm.

*Factual and Procedural Background*

The facts of the underlying offense are set out in this court's opinion on direct appeal. *See Levan*, 93 S.W.3d at 583–84. Appellant and the victim had a child together and had been involved in a lengthy and troubled relationship. *Id.* at 583. A protective order had been issued against Appellant before the shooting that led to the victim's death. *Id.* The evidence at trial showed that, in the days before the shooting, Appellant had given a .38 caliber revolver to the victim and that he showed her how to use it. *Id.* at 583–84.

At trial, Appellant testified that, on the day of the incident, he went to the victim's house, and that, upon his arrival, he and the victim began to argue. *Id.* at 583. Appellant stated that he then retrieved the revolver from a closet with the intention of taking it with him. *Id.* According to Appellant, the revolver accidentally discharged when the victim attempted to grab it from him. *Id.* However, Appellant did not mention a struggle over the gun to the first officer who responded at the scene. Instead, Appellant told the officer: "We were looking at the gun, and it just

went off." *Id.* The evidence showed that the range of fire between the revolver and the victim was a distance of three to six feet. *Id.* at 584.

At trial, the State also called Jimmy Ruiz, a fellow inmate and "jailhouse lawyer" whom Appellant had asked to assist with his case and to whom Appellant had provided a written account of the events. *Id.* The account Appellant gave Ruiz differed from what Appellant told the police and the jury. According to Ruiz, Appellant admitted that he cocked the hammer and then intentionally fired the revolver to frighten the victim from calling the police, although he did not intend for the bullet to strike her. *Id.*

This is Appellant's second motion for post-conviction DNA testing. His first motion was denied, and his appeal from that denial was dismissed for want of jurisdiction because it was untimely. *See Levan v. State*, No. 11-23-00286-CR, 2024 WL 39874, at *1 (Tex. App.—Eastland Jan. 4, 2024, no pet.) (mem. op., not designated for publication).

Appellant's present motion—styled a "Motion for Independent Examination of DNA Evidence"—was filed on May 3, 2024. In the motion and supporting affidavit, Appellant sought testing of (1) the revolver and swabs taken from it, (2) wipes from the hammer and barrel of the revolver, (3) the hand-wipe kit and swabs taken from the victim's hand, and (4) the casings. Appellant asserted that testing would reveal the victim's DNA on the barrel and the absence of his DNA on the hammer, demonstrating that the shooting was accidental rather than intentional.

*Jurisdiction*

A convicted person may appeal the denial of a motion for post-conviction forensic DNA testing in the same manner as any other criminal matter. CRIM. PROC. art. 64.05. Because Appellant has filed a timely appeal, we have jurisdiction over

the trial court's order.  *Reger v. State*, 222 S.W.3d 510, 513 (Tex. App.—Fort Worth 2007, pet. ref'd).  However, our jurisdiction is limited to issues arising under Chapter 64.  *Id.*  It does not extend to collateral attacks on the underlying judgment or to matters beyond the scope of the statute.  *Id.*

*Standard of Review*

In reviewing a trial court's ruling on a motion for post-conviction DNA testing, courts apply a bifurcated standard of review.  *Skinner v. State*, 665 S.W.3d 1, 16 (Tex. Crim. App. 2022); *Reger*, 222 S.W.3d at 514.  Under the bifurcated standard, the appellate court affords almost total deference to the trial court's determination of historical facts and of application-of-law-to-fact issues that turn on the credibility and demeanor of witnesses, but reviews de novo all other application-of-law-to-fact questions.  *Skinner*, 665 S.W.3d at 16.  However, in this instance, the trial court's rulings were based on a written record.  Accordingly, we review the trial court's rulings de novo.  *See Smith v. State*, 165 S.W.3d 361, 363 (Tex. Crim. App. 2005).

*Did the Trial Court Err in Denying DNA Testing Under Article 64.03?*

In his sole issue, Appellant contends that the trial court erred in denying his motion for DNA testing.  The issue has both a substantive component and a procedural component.

A.  *The Statutory Prerequisites*

A convicting court may order forensic DNA testing only if the convicted person satisfies each of the prerequisites of Article 64.03.  Crim. Proc. art. 64.03.  Among other requirements, the trial court must find that the evidence still exists in a testable condition, the chain of custody is intact, "there is a reasonable likelihood that the evidence contains biological material suitable for DNA testing," and

"identity was or is an issue in the case," and the movant must establish, by a preponderance of the evidence, he would not have been convicted had exculpatory results been obtained and the request is not made to unreasonably delay the execution of his sentence or the administration of justice. *See id.*; *Gutierrez*, 337 S.W.3d at 889. All of these requirements must be met, and the failure of any one of them defeats the request for testing. *Gutierrez*, 337 S.W.3d at 890.

B. *The Identity Requirement*

The identity requirement of Article 64.03 pertains to the DNA evidence. *See Prible v. State*, 245 S.W.3d 466, 469–70 (Tex. Crim. App. 2008). Identity is not made an issue by a plea of not guilty or an assertion that someone else committed the offense. *Id.* Rather, the dispositive question is whether exculpatory results— results that exclude the movant as the donor of the biological material—would establish, by a preponderance of the evidence, that the movant did not commit the offense. *Hall v. State*, 569 S.W.3d 646, 655–56 (Tex. Crim. App. 2019); *Gutierrez*, 337 S.W.3d at 899; *Dohnal v. State*, 540 S.W.3d 651, 655 (Tex. App.—Eastland 2018, pet. ref'd) ("'Exculpatory results' means results excluding the convicted person as the donor of the material."). A movant thus makes identity an issue by showing that exculpatory testing would exclude him as the perpetrator. *See Blacklock v. State*, 235 S.W.3d 231, 232–33 (Tex. Crim. App. 2007) ("The legislative history of Chapter 64 . . . very clearly shows that [efforts to exclude the movant as the donor] is precisely the situation in which the Legislature intended to provide post-conviction DNA testing.").

Appellant, however, does not deny that he was present at the scene and directly involved in the shooting. Instead, he (a) concedes that he was present at the time of the shooting and (b) admits that he was handling the revolver when it

discharged. *Levan*, 93 S.W.3d at 583. Because Appellant has admitted to facts that identify him as a person who was involved in the shooting, the motion fails to raise a question concerning the identity of the shooter, as required by Article 64.03. *See Reger*, 222 S.W.3d at 514 (defendant who admitted shooting the victim but sought testing to support a self-defense theory failed to raise an identity issue).

C. *The Preponderance Requirement*

Appellant also fails to demonstrate that, by a preponderance of the evidence, he would not have been convicted had he obtained exculpatory results. *See* CRIM. PROC. art. 64.03(a)(2)(A); *Gutierrez*, 337 S.W.3d at 900–01. By Appellant's own account, both he and the victim handled the revolver in the days before, and at the moment of, the shooting. Thus, the discovery of the victim's DNA—or the absence of Appellant's DNA—on any particular part of the revolver would not have introduced any new considerations into the jury's assessment of the circumstances that led to the shooting. *See Prible*, 245 S.W.3d at 470 (the presence of another person's DNA, without more, does not constitute affirmative evidence of innocence).

We note that Appellant argues, as a part of his brief, that the hammer itself should be tested for DNA, reasoning that such evidence would impeach Ruiz's testimony that Appellant told him he had cocked the hammer before firing. However, the absence of a movant's DNA on an item is not affirmative evidence of innocence, because it could simply mean that none was deposited. *Rivera v. State*, 89 S.W.3d 55, 60 (Tex. Crim. App. 2002); *see also Hall*, 569 S.W.3d at 658 ("Touch DNA poses special problems because 'epithelial cells are ubiquitous on handled materials,' because 'there is an uncertain connection between the DNA profile identified from the epithelial cells and the person who deposited them,' and because

'touch DNA analysis cannot determine when an epithelial cell was deposited.'" (quoting *Reed v. State,* 541 S.W.3d 759, 777 (Tex. Crim. App. 2017))). Furthermore, even if the testing could somehow conclusively indicate that Appellant never touched the hammer, such evidence would not be exculpatory in the sense that is contemplated in the statute, since it does not establish that someone other than Appellant was the shooter. *Id.* at 655–56.

Because the results of additional DNA testing could not establish, by a preponderance of the evidence, that Appellant would not have been convicted, Appellant has also failed to meet the preponderance requirement of Article 64.03. *See Gutierrez*, 337 S.W.3d at 900–01.

D. *The Procedural Complaints*

As a part of his sole issue, Appellant also complains that the trial court failed to request that the State file a response to his motion pursuant to the requirements of Article 64.02(a).

Article 64.02 provides that, on receipt of a motion for forensic DNA testing, the convicting court must provide the attorney representing the State with a copy of the motion and must require the attorney to either deliver the evidence to the court, along with a description of its condition, or explain in writing why the State cannot do so. CRIM. PROC. art. 64.02(a). This statutory directive is mandatory. *See Peyravi v. State*, 440 S.W.3d 248, 250 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

However, where identity is not an issue, any error by the trial court in failing to request a response from the State is harmless. *Id.* at 249–50 (presuming the trial court failed to forward the motion to the State and concluding that any error was harmless because identity was not an issue and the trial court properly denied the

7

appellant's motion for post-conviction DNA testing). Likewise, where there is no possibility of obtaining exculpatory results, any error in failing to request a response is harmless. *Campbell v. State*, No. 01-20-00494-CR, 2023 WL 138874, at *10 (Tex. App.—Houston [1st Dist.] Jan. 10, 2023, no pet.) (mem. op., not designated for publication) (concluding that any error in not requiring a response from the State was harmless because, among other things, there was no possibility of obtaining exculpatory results); *see also Padilla v. State*, No. 03-12-00299-CR, 2013 WL 3185896, at *10 (Tex. App.—Austin June 20, 2013, pet. ref'd) (mem. op., not designated for publication) (concluding that the failure to follow Article 64.02's procedural steps was harmless where the movant was not entitled to testing under Articles 64.01 and 64.03).

In this instance, we have concluded that identity is not an issue and that, in any event, DNA testing would not lead to exculpatory evidence. Accordingly, we likewise conclude that any error arising out of the trial court's failure to comply with the requirements of Article 64.02(a) is harmless error. *See Peyravi*, 440 S.W.3d at 250; *Campbell*, 2023 WL 138874, at *10.

Appellant also complains that the trial court denied his motion without stating its reasons and without entering findings of fact. However, Chapter 64 does not require a convicting court to enter findings of fact when it denies a motion for forensic DNA testing. *Wood v. State*, 693 S.W.3d 308, 313 (Tex. Crim. App. 2024) (explaining that there is no requirement that a court make findings if it determines that a movant has failed to meet the prerequisites in Article 64.03(a)(1)). Chapter 64 requires only a written order disposing of the motion, and the trial court entered such an order here.

*Was Chapter 64 Unconstitutionally Applied to Appellant?*

Appellant also contends that Chapter 64 was unconstitutionally applied to his situation. He frames the complaint as a denial of due process and fundamental fairness and argues that the "identity as an issue" requirement should be confined to cases of stranger-victim misidentification. *See In re Robertson*, No. 03-19-00282-CR, 2021 WL 1312589, at *6 (Tex. App.—Austin Apr. 8, 2021, no pet.) (mem. op., not designated for publication). However, a complaint that a statute is unconstitutional as applied is subject to the ordinary rules of error preservation and must therefore be raised in the trial court. *See* TEX. R. APP. P. 33.1(a); *Curry v. State*, 910 S.W.2d 490, 496–97 (Tex. Crim. App. 1995); *Robertson*, 2021 WL 1312589, at *7 (rejecting the appellant's as-applied constitutional challenge to Chapter 64 and his argument to limit the "identity" requirement to stranger-victim misidentification, because the issue was not preserved for appeal).

There is no indication in the record before us that Appellant attempted to challenge the trial court's ruling on an as-applied basis prior to appeal. Accordingly, Appellant has failed to preserve his constitutional challenge. TEX. R. APP. P. 33.1(a).

*Was the Failure to Appoint Counsel Error?*

Appellant also appears to complain that the trial court failed to appoint counsel on his behalf pursuant to the requirements of Article 64.01(c). Under Article 64.01(c), a convicted person is entitled to counsel during a proceeding under Chapter 64. CRIM. PROC. art. 64.01(c). However, the convicting court is required to appoint counsel only if three conditions are satisfied. *Id.* First, the convicted person must inform the court that he wishes to submit a motion under Chapter 64. *Id.* Second, the court must determine that there are reasonable grounds for a motion to be filed. *Id.* And finally, the court must determine that the person is indigent. *Id.*

Appellant has attached a letter to his brief that suggests he submitted a request for appointment of counsel for purposes of filing a motion. However, that letter does not appear in the clerk's record, nor is there any other indication in the record that Appellant submitted a request to the trial court for the appointment of counsel.

To preserve a complaint for appellate review, the record must reflect that the complaint was presented to the trial court. *See* TEX. R. APP. P. 33.1(a). The appellate record consists of the clerk's record and, when necessary, the reporter's record. TEX. R. APP. P. 34.1. As such, we may not consider documents that are attached to a brief but that do not otherwise appear in the appellate record. *See Robb v. Horizon Cmtys. Improvement Ass'n*, 417 S.W.3d 585, 589 (Tex. App.—El Paso 2013, no pet.) (holding that documents attached to a brief, but not appearing in the record, cannot be considered on appellate review). Because nothing in the clerk's record reflects that Appellant requested the appointment of counsel, or that the court found reasonable grounds for a motion to be filed, Appellant has failed to demonstrate that the trial court committed error in failing to appoint counsel.

*Are the Remaining Complaints Within the Scope of an Chapter 64 Appeal?*

Throughout his motion and brief, Appellant also argues that the firearm and swabs were obtained illegally in violation of Article 38.23 of the Code of Criminal Procedure, the State suppressed favorable evidence, the State destroyed his shirt (which he contends would have corroborated his account of the shooting), and several witnesses committed perjury and acted in conspiracy. *See* CRIM. PROC. art. 38.23. However, an appeal under Chapter 64 does not confer jurisdiction to entertain collateral attacks on the trial court's judgment or to review, under the guise of a DNA-testing appeal, matters beyond the scope of the Chapter. *Reger*, 222

S.W.3d at 513.  We decline to review Appellant's additional complaints because they fall outside the scope of an appeal under Chapter 64.  *See id.*

We overrule Appellant's sole issue on appeal.

*This Court's Ruling*

We affirm the order of the trial court.


JOHN M. BAILEY

CHIEF JUSTICE


July 23, 2026

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.